IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| Thomas Austin, # 125837 | ) | |
| PLAINTIFF, | ) | CIVIL ACTION NO. 2:06-CV-146-WKW |
| vs. | ) | |
| John Cummins, et al. | ) | |
| DEFENDENTS | ) | |

AFFIDAVIT

Before me, the undersigned authority, a Notary Public in and for said county, and State of Alabama at Large, personally appeared Janet Hicks, who being known to me, and being by me first duly sworn, deposes and says on oath as follows:

My name is Janet Hicks, and I am presently employed as a Correctional Officer Supervisor I with the Department of Corrections, Frank Lee Youth Center, Post Office Box 220410, Deatsville, Alabama, 36022. I am over twenty-one (21) years of age.

The Plaintiff alleges I assaulted him by grabbing him around his throat and slamming him to the kitchen door with my right hand. He further alleges that I pointed an ink pen in his face, told him he was a "lie" and threatened him. Inmate Thomas claims to feel threatened every time I come to work, fearing physical injury from me.



EXHIBIT 2

These allegations are false. The attached incident report, #FLYC 06-0445, is submitted in reference to this incident. In response to his claim, I submit the following:

On the date and time in question, I was not in the dorm passing out sheets. I was supervising the officer assigned to Dorm #4 as he, Officer Edward Easterling, passed out the bed sheets. I was standing in the recreation area/day room observing the officer. Upon completion of passing out the sheets, the officer pushed the laundry bin to the recreation area and locked the grill gate. Inmate Austin approached the gate and stated that his sheet was torn. I informed him that he knew the routine, another sheet would be issued to him and turned away. Inmate Austin stated, "Shut up," in a disrespectful manner. I asked him what did he say. He became belligerent and stated, "Open the door I'll tell you what I said." Inmate Austin continued his disrespectful behavior, mumbling to the other inmate at the door. I opened the door to verbally reprimand him. (Having been a supervisor for eleven years, I knew not to reprimand him in the dorm in front of other inmates.) The Kitchen door was open. The Kitchen is approximately five yards from the grill gate. I pointed toward the kitchen. He walked to the Kitchen and the other inmates at the door laughed at him. Inmate Austin had a "smirk" on his face. I asked him what did he say and he stepped toward me and stated, "I'll tell you what I said." I pushed him away from my face using my open right hand to his upper chest area. I did not choke him. I would have had to use both hands. I am right handed, if I pointed a pen in his face, the pen would have been in my right hand. I released my hold and we departed after telling him I was writing him up.

After this incident, I immediately telephoned my supervisor, Captain Horace Burton, reported the incident to him and asked him if I needed to call the on-call duty officer, to report a use of force. Captain Burton stated that he did not see any reason for contacting the on-call duty officer and instructed me to leave him a copy of the incident report.

By now, inmate Austin was pacing the floor and he kept coming to the door stating he needed to speak to me. I motioned to him to come in the office. Inmate Austin kept pleading with me, not to write him up, that he did not say "shut up" to me. I instructed Officer Thomas Huggins to transport inmate Austin to the Health Care Unit for a body chart. Inmate Austin, stated nothing was wrong with him and walked out of the office. I could hear the inmates in the dorm teasing inmate Austin. I could hear inmate Austin making the statement "She shouldn't have put her hands on me." Inmate Austin came back to the office door. I motioned for him to enter. Another officer, Officer Windom McGhee, was present and he talked inmate Austin in to going to the Health Care Unit. Inmate Austin went to the HCU but refused a body chart. See Attached refusal for medical treatment. If inmate Austin had been allegedly assaulted a body chart would have shown redness and/or injuries to his throat.

I did not write inmate Austin a disciplinary because I was not 100% certain that he was the one who had said, "shut up". There were other inmates standing at the door. It should be noted, however, inmate Austin received informal disciplinary action, a behavior citation, for violation of Rule #57, Insubordination on December 4, 2005. The circumstances are similar. Inmate Austin told an officer to "shut up", after being ordered to report outside for a fire drill. (See attached copy of citation #05-0475.)

At no time did I assault inmate Austin. If he fears for his safety as he alleges, he would not, to this day, continue to speak to me, offer me canteen items, or make gestures asking for me to give him my food. He would have also asked for a transfer.

In conclusion, inmate Austin claims to have witnesses to this alleged assault, an officer and an inmate. An investigation was conducted in reference to his complaint, both of his witnesses testified that an assault did not occur.

This statement is true and correct.

*Janet Hicks*

Janet Hicks

STATE OF ALABAMA)

ELMORE COUNTY  )

SWORN AND SUBSCRIBED BEFORE ME AND GIVEN UNDER BY HAND AND OFFICIAL SEAL THIS, THE __6th__ DAY OF __March__, 2006.

*Kimberly H____*
Notary Public

# Prison Health Services

## REFUSAL OF TREATMENT FORM

Institution: __FLYC__

Resident's Name: __Thomas Alston__   ID# __B/125837__

D.O.B. __2-6-62__

I, _____ have, this day, knowing that I have a condition
(Name of Inmate)

requiring medical care as indicated below:

| | | |
|---|---|---|
| ___ A. Refused medication. | ___ E. | Refused X-Ray services. |
| ___ B. Refused dental care. | ___ F. | Refused other diagnostic tests. |
| ___ C. Refused an outside medical appointment. | ___ G. | Refused physical examination. |
| ___ D. Refused laboratory services. | ✓ H. | Other (Please specify) |

Reason For Refusal __Refusing a body chart. Claims nothing is wrong with him.__

Potential Consequences Explained _____

I acknowledge that I have been fully informed of and understand the above treatment recommendations and the risks involved in refusing them. I hereby release and agree to hold harmless the state, statutory authority, all correctional personnel, medical/health personnel from all responsibility and any ill effects which may result from this refusal and I shall personally assume responsibility for my welfare.

I have read this form and certify that I understand its contents.

Witness Signature: __[signature]__

Witness Signature: __Thomas Huggins COI__

Patient Signature: __Thomas Austin__

Date: __11/8/05__

Time: __10:00 pm__

NOTE: A refusal by the resident to sign requires the signatures of at least one witness in addition to that of the medical staff member.

PHS MD-70108

## Alabama Dept. Of Correction
### Major Institutions – Behavior Citation

| INMATE: Thomas Austin | AIS: 125837 | CELL/DORM/BED #: 4-36 |

FACILITY: **FRANK LEE YOUTH CENTER**

The above named inmate is cited by: Officer Adam McDaniel

For the following violation(s) of institutional/departmental rule(s) as described: #57, Insubordination: You, inmate Thomas Austin, BM/125837, stated to Officer Adam McDaniel "Shut up," after he ordered you and the inmates sitting at a table in Rec. area #3 and #4, to report outside for the Institutional Fire Drill.

Date of Infraction: 12/04/05      Time of Infraction: 2:03 p.m.

*A. McDaniel* COI
Citing Employee's Signature/Date

I have investigated the circumstances surrounding this citation and recommend that the following sanction(s) be taken against this inmate.

- [ ] Counseling/Warning  [x] Loss of Telephone privileges 30 days.
- [x] Loss of Canteen privileges for 30 days.  [ ] Removal from incentive program.
- [x] Loss of Visiting privileges for 30 days.  [ ] Removal from Hobby Crafts.
- [ ] Extra duty for ___ days at ___ hours per day under supervision of ___ shift.
- [ ] Wear pink clothing for ___ days (Indecent Exposure/Exhibitionism)**

*Refused to Sign*                    *Nicks C/O 1*
Inmate's Signature/AIS/Date          Shift Supervisor's Signature/Title/Date

**Wearing of Pink Clothing must be approved by the Warden

After having reviewed this citation and the recommended sanction(s) presented, the following action is approved.

- [x] Citation and sanctions are approved.
- [ ] Citation and sanctions are approved as modified below:

- [ ] Citation and sanctions are disapproved and formal disciplinary action is to be immediately initiated under the provisions of ADOC AR 403.
- [ ] Citation and sanctions are disapproved. Expunge action from inmate's file.

12/12/05                             12-5-05
Effective Date of Sanctions          Warden/Designee's Signature/Date

Inmate's receipt of completed action: *Refused to Sign*
                                     Inmate's Signature/AIS/Date
Serving Officer's Initials:

Distribution: [ ] Captain  [ ] Shift Commander ___ shift.  [ ] Business Office
              [ ] Psychologist  [ ] Classification  [ ] Central Records

Annex A to AR 414

STATE OF ALABAMA
DEPARTMENT OF CORRECTIONS

# INCIDENT REPORT

| 1. Institution: Frank Lee Youth Center | 2. Date: 11/08/05 | 3. Time: 9:25 p.m. | 4. Incident Number: FLYC 05-0445 | Class Code: C |
|---|---|---|---|---|
| 5. Location Where Incident Occurred: Rec area #3 & #4/Dining Hall, near exit door | | 6. Type of Incident: Informational | | |
| 7. Time Incident Reported: 9:40 p.m. | | 8. Who Received Report: Captain Horace Burton | | |

9. Victims:   Name                                   AIS
a.   N/A                                             No.
b.                                                   No.
c.                                                   No.

10. Suspects:   Name           AIS
a. Thomas Austin              No. B/125837
b.                            No.
c.                            No.
d.                            No.
e.                            No.

11. Witnesses:   Name          AIS
a. N/A                        No.
b.                            No.
c.                            No.
d.                            No.
e.                            No.
f.                            No.
g.                            No.

PHYSICAL EVIDENCE:

12. Type of Evidence
   N/A

13. Description of Evidence:
   N/A

14. Chain of Evidence:
a. N/A
b.
c.
d.
e.

15. Narrative Summary:
   On November 8, 2005, Lt. Janet Hicks was the on duty Shift Commander for the Second Shift. At approximately 9:10 p.m., sheets were passed out to the inmate population. All inmates were directed to report to their assigned beds for the issuance of sheets. As the sheets were being passed out, Lt. Hicks was standing in Dorm #4, then Rec. area #3 and #4, monitoring the issuance of sheets in Dorm #4. Inmate Thomas Austin, BM/125837, approached the grill gate, raising one of his sheets and stated, "Lt. I need another sheet." Several other inmates in the dorm came to the grill gate with torn sheets. Lt. Hicks informed the inmates that another sheet would be issued upon the completion of the rest of the dorms. At that time, someone shouted, "Shut up!" Lt. Hicks observed inmate Austin at the door and asked inmate Austin what did he say. Inmate Austin stated, "Open the door, I'll tell you what I said." Lt. Hicks opened the door to Dorm #4, stepped in the dinning hall because the laundry bin had been pushed out of the dorm and was blocking the door to the office, plus the office was full (officers were changing their batteries) and asked inmate Austin, "Now tell me what did

Distribution: ORIGINAL AND ONE (1) COPY to Central I & I Division      COPY to Deputy Commissioner of Operations (Class A and B ONLY)
COPY to Institutional File                                              COPY to Central Records Office

ADOC Form 302-A – June 1, 2005

STATE OF ALABAMA
DEPARTMENT OF CORRECTIONS

# INCIDENT REPORT/DUTY OFFICER REPORT
## CONTINUATION

| Institution: FRANK LEE YOUTH CENTER | Incident Number: FLYC 05- 0445 | Class Code: C |
|---|---|---|
| Date: 11/08/05 | Type of Incident: Informational | |

**Narrative Summary (Continued) Page No. 2**

you say?" Inmate Austin stepped toward Lt. Hicks in a threatening manner and stated, "I'll tell you what I said." Lt. Hicks then placed her open right hand on inmate Austin's upper chest area and pushed him against the grill exit door. Inmate Austin stated that he was not the inmate that said shut up, that he was the inmate laughing. Lt. Hicks immediately released inmate Austin. Lt. Hicks realized that a minimal amount of force had been used without backup and departed the dinning room area, heading toward the office. Inmate Austin became upset and stated, "My mother is dead, don't you ever put your hands on me," and walked away. Lt. Hicks entered the office. Approximately 2 - 3 minutes later, inmate Austin calmly knocked on the door to the office and asked if he could talk to Lt. Hicks. Lt. Hicks motioned to inmate Austin to enter. Inmate Austin stated that he was not the inmate who shouted shut up. Lt. Hicks discussed the incident with inmate Austin and advised inmate Austin that he would need to be transported to the health care unit for a body chart. Inmate Austin walked out of the office and stated, "I'm not getting a body chart, nothing is wrong with me." Lt. Hicks instructed Officer Thomas Huggins, who was present in the office, to escort inmate Austin back in to the office. Inmate Austin was even more irate and stated, "You shouldn't have put your hands on me." After Officer W. R. McGhee explained to inmate Austin that he would need to get a body chart, inmate Austin calmed down, went to the dorm and then returned and stated, "Just transfer me." Each time inmate Austin departed the office, went to the dorm, he came back more and more irate. Several of the officers assigned to the shift were still in the process of changing out the batteries on their radio. They talked to inmate Austin and eventually he complied and was taken to the health care unit for a body chart.

At approximately 9:38 p.m., Officer Huggins departed FLYC with inmate Austin, en route to the health care unit for a body chart. At approximately 9:40 p.m., Lt. Hicks reported this incident to Captain Horace Burton. At approximately 10:00 p.m., inmate Austin refused any type of treatment at the health care unit and signed the attached refusal form. At approximately 10:10 p.m., Officer Huggins returned to FLYC with inmate Austin. No further action taken at this time.

*Janet Hicks, COSI*

ADOC Form 302-B – June 1, 2005

8